Laneisha DAVIS, Appellant

v.

**AUTONATION USA CORPORATION, Autonation USA, Autonation, Inc., Autonation USA Corporation d/b/a Mike Hall Chevrolet, Inc. d/b/a Champion Chevrolet Hwy. 6, Mike Hall Chevrolet, Inc. d/b/a Champion Chevrolet, Appellees.**

**No. 01–05–00791–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 16, 2006.

Mark O. Midani, Midani, Hinkle & Cole, LLP, Houston, TX, for appellant.

Ruth Ann Daniels, Gibson, McClure, Wallace & Daniels, L.L.P., Jonni L. Walls, Dallas, TX, for appellees.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

In this employment discrimination suit, appellant, Laneisha Davis, appeals the order granting summary judgment in favor of appellees, Autonation USA Corporation, Autonation USA, Autonation, Inc., Autonation USA Corporation d/b/a Mike Hall Chevrolet, Inc. d/b/a Champion Chevrolet Hwy. 6, Mike Hall Chevrolet, Inc. d/b/a Champion Chevrolet (collectively "appellees"). In one issue on appeal, Davis argues that the trial court improperly granted summary judgment because material issues of fact exist.

We affirm.

## Background

On or around November 11, 1996, Davis started to work for appellees. On April 1, 2001, Davis transferred to the finance department, at Mike Hall Chevrolet, where she worked as a finance manager. At that time, Mike Gardner served as the General Manager and George Duncan served as the Finance Director. In her deposition, Davis stated that she had problems from the first day she went to work for Duncan, her immediate supervisor. She stated that, when she first got there, she had a meeting with Duncan and they did not "hit it off." She described having problems on the first or second day because Duncan was not pronouncing her name correctly. She also complained to Gardner that Duncan was not rotating the schedule fairly. At the end of June 2001, Davis told Duncan that he was not rotating the deals properly. She said that the unfair rotation of deals started in May. She also complained about having to do secretarial duties.

On November 9, 2001, Davis had a meeting with Duncan and Gardner. In the meeting Davis received a corrective action record for a "Failure To Meet Performance Standard." Under the tab named "Required Improvement," the action record states that "the Finance department and the dealership as a whole cannot continue to sustain this loss of revenue." Davis was told that she could either transfer to the Internet department or be terminated because of poor performance. Davis decided to transfer to the Internet department, where she received substantially less money than she had previously earned as a finance manager. Davis ultimately quit her job at Mike Hall Chevrolet because she was not earning enough money. Davis testified that, when she quit in January 2002, Duncan was not mistreating her. These events form the basis of Davis's discrimination complaint, which are the subject of this appeal.[1]

---

1. On January 2, 2002, Davis wrote a letter to Gardner stating, "This letter is to serve as my resignation as of today, January 2, 2002. I am exploring some different options that are being made available to me. It was a plea-

On June 5, 2002, Davis filed a charge of discrimination [2] against appellees. Her charge of discrimination lists race and sex discrimination that occurred between April 1, 2001 and January 2, 2002. She stated on the form that "I was discriminated because of race and gender because I was treated differently in my department by my immediate supervisor, George Duncan." On the back of the form she stated that she was "given finance deals that were less lucrative, given secretarial duties that [the] other guy did not have to do." Where the form stated, "On what date did you learn that the company took this action against you," Davis answered "almost immediately 4–1–01."

On May 23, 2003, Davis sued appellees, alleging claims of race and gender discrimination, retaliation, negligent hiring, negligent supervision, negligent retention, and intentional infliction of emotional distress. Appellees' filed a traditional motion for summary judgment on December 17, 2004. In their motion for summary judgment, appellees argued that Davis failed to comply with section 21.202(a) of the Labor Code because she failed to file her charge of discrimination within 180 days of her demotion or any other discrete act of alleged discrimination by her employer. Section 21.202 provides "a complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice oc-

curred." Tex. Lab.Code Ann. § 21.202 (Vernon 2006). Appellees also alleged that Davis did not comply with section 21.201 of the Labor Code because she failed to describe her allegations of harassment and retaliation.

Davis filed an amended petition on February 2, 2005, alleging a hostile work environment and discrimination based on race and gender. On February 1, 2005, in response to the motion for summary judgment, Davis stated that she timely filed her lawsuit within the 180–day limitation because the appellees' actions were a continuing violation of her rights under the Texas Commission on Human Rights Act (TCHRA) [3] until the time she was forced to resign. She further stated that "[she] welcomed the opportunity to transfer to another department to rid herself of Duncan" and that she "did not appreciate, or experience the cumulative affect of [Duncan's] actions until she received her nominal pay in December."

The appellees filed a reply to Davis's response reiterating their previous points. On May 2, 2005, the trial court signed an order that granted the entirety of the appellees' motion for summary judgment, without stating its reasons, and ordered that all of Davis's claims were dismissed with prejudice. Davis filed a motion for new trial, which the trial court denied. Davis appeals the trial court's judgment that dismissed her discrimination claims.

sure to work for this company, and I regret that I can not stay."

**2.** An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refused to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab.Code Ann. § 21.051 (Vernon 2006).

**3.** TCHRA became the Texas Workforce Commission Civil Rights Division on March 19, 2004. See Tex. Lab.Code Ann. § 21.0015 (Vernon 2006).

## Analysis

Whether a court has subject matter jurisdiction is a legal question subject to de novo review. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). The standard of review in an appeal from a traditional summary judgment requires a defendant who moved for a summary judgment on the plaintiff's causes of action (1) to show there is no genuine issue of material fact as to at least one element of each of the plaintiff's causes of action or (2) to establish each element of the defendant's affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995).

In reviewing a traditional or a no-evidence summary judgment, we assume all the evidence favorable to the nonmovant is true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001). When, as here, the trial court's summary judgment order does not specify the ground or grounds on which summary judgment is rendered, we will affirm the summary judgment if any of the grounds stated in the motion is meritorious. *Id.* (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989)).

### Adverse Employment Action

In her sole issue on appeal, Davis asserts that a fact issue exists as to whether a reasonably prudent person would have known that an adverse employment action occurred on or about November 9, 2001. Davis contends that, at the time that she was reassigned to the Internet department, she did not know that the transfer involved a reduction in pay or whether the transfer was a promotion, demotion, or lateral move. She contends that she did not realize that the transfer was an adverse employment decision until she received her first paycheck in mid-December 2001. Thus, Davis contends that the 180–day limitations period should have started running in mid-December 2001. We disagree.

The United States Supreme Court has held that, in discrimination cases, " '[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.' " *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979)). Accordingly, Texas law requires that a complaint of unlawful employment practices be filed with the EEOC or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred. *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 492 (Tex.1996); *see* TEX. LAB.CODE ANN. § 21.202 (Vernon 2006) (entitled "Statute of Limitations"). The fact that the employee may have felt the effects of the discriminatory treatment later or that the damage may continue to occur for an extended period of time after the discriminatory treatment does not extend the commencement of limitations. *Specialty Retailers,* 933 S.W.2d at 493. This time limit is mandatory and jurisdictional. *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 486 (Tex.1991). Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction. *Czerwinski v. Univ. of Tex. Health Science Ctr.,* 116 S.W.3d 119, 122 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Vincent v. West Tex. State Univ.,* 895 S.W.2d 469, 473 (Tex.App.-Amarillo 1995, no writ).

In her charge of discrimination, Davis admitted that she recognized an ad-

verse condition on April 1, 2001. Specifically, in her Charge of Discrimination filed with the TCHR, Davis stated that she learned that the company had taken action against her "almost immediately 4–1–01." On the same form, she wrote that she had been discriminated against by being "given finance deals that were less lucrative, given secretarial duties the other guy did not have to do." She answered that George Duncan caused the harm. In her deposition, Davis stated that, on November 9, 2001, "I received a write-up and was told I can go to the internet department or be terminated. I was told to take a couple days to think about it. I did, maybe two days or so, and came back to work." When she received the write-up, she told Duncan and Gardner that she "didn't think it was fair because of the rotating of the deals." Davis believed at that time that Duncan was discriminating against her by rotating the deals unfairly. In her amended petition, Davis alleged that, after she began working at Mike Hall Chevrolet,

> Duncan began to harass Davis and create a hostile work environment. Duncan would purposefully mispronounce Davis' name in front of co-workers, constantly scheduled her to work the late shift, knowing that she was married with a young child, made her clean the office area, and change the fax machine. Duncan also would not rotate deals fairly so as to give Davis an equal opportunity to sell the after-market products.

Here, the basis of Davis's discrimination complaints are Duncan's acts of making her perform secretarial acts, giving her less lucrative finance deals, and working the late shift. On November 9, 2001, she was reprimanded for not meeting performance standards, to which she replied that she did not think the reprimand was fair because of the unfair finance deals. At this meeting, she was told that she could transfer to the Internet department or be terminated.

In *Specialty Retailers*, the Texas Supreme Court considered when an unlawful employment practice had occurred for purposes of the 180–day jurisdictional requirement. 933 S.W.2d at 491–93. The court noted that the plaintiff had alleged that her supervisor discriminated against her by favoring younger workers while continually criticizing the plaintiff and requiring her to work after hours, creating a hostile work environment and causing stress and strain. *Id.* at 491. The court held that an unlawful employment practice occurred on the date that the plaintiff was informed that she was being replaced and would be fired if her leave lasted longer than one year. *Id.* At that point in time, the terms and conditions of her employment were affected.

Here, Davis was told on November 9, 2001 that she could either transfer to a different department or be terminated. She responded that this action was not fair because Duncan was not rotating deals fairly. We conclude that the allegedly discriminatory employment decision of which Davis complains occurred no later than November 9, 2001. Thus, to preserve her claims, Davis had to file suit within 180 days of November 9, 2001. Because Davis filed her complaint more than 180 days after the adverse employment action, she failed to satisfy the requirements of section 21.202. *See* TEX. LAB.CODE ANN. § 21.202. We conclude that appellees showed as a matter of law that Davis's claims were not filed within 180 days of when Davis first learned about the discriminatory acts. Accordingly, the trial court lacked jurisdiction over her claims of discrimination.

**Continuing Violation**

■ Davis next asserts that there is "sufficient evidence that appellee's actions,

including ... discriminatory rotation of deals, scheduling of work shifts and making Davis clean the office area, constituted a hostile work environment so as to invoke the continuing violation theory."

■ The "continuing violation" doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Wal–Mart Stores v. Davis*, 979 S.W.2d 30, 31 (Tex.App.-Austin 1998, pet. denied). Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Cooper–Day v. RME Petroleum Co.*, 121 S.W.3d 78, 87 (Tex. App.-Fort Worth 2003, pet. denied); *see also Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.1998). In *Davis*, the Austin Court of Appeals held that in some instances "equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person in the same or a similar position." *Id.* The "focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Id.; see also Huckabay*, 142 F.3d at 239 (holding that touchstone in determining whether one act is part of continuing violation is whether employee was put on notice that his rights had been violated).

Appellees respond that all of Davis's complaints began on April 1, 2001 and were over and complete when Davis was transferred to the Internet department on November 9, 2001. We agree. Davis made no allegations of discrimination after she had been transferred. Accordingly,

Davis cannot rely on the continuing violation theory to save her untimely complaints.

**Equitable Considerations**

■ Davis next argues that the "180–day time limitation should be tolled based on equitable considerations because employees of Autonation led her to believe she may be eligible for a finance position at another Autonation dealership." [4]

■ When the employer hides vital information from the employee that prevents the employee from knowing of discrimination, equitable estoppel is recognized to toll the 180–day filing period. *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 880 (5th Cir.1991). As appellees point out, Davis presented no evidence that appellees hid information that would have prevented Davis from knowing of the discrimination. Indeed, as Davis noted in her deposition, she knew from the very beginning that appellees were discriminating against her. Accordingly, we hold that under the facts of this case, Davis cannot rely on equitable estoppel to toll the 180–day statute of limitations.

**Conclusion**

Because we conclude that Davis did not file her complaint within the 180–day jurisdictional statute of limitations, we affirm the order of the trial court that dismissed Davis's discrimination claims against appellees.

---

4. Her argument contains no citation to au-

thority. *See* Tex.R.App. P. 38.1(h).