

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00149-CV
_____


GREG ABBOTT, ATTORNEY GENERAL OF THE
STATE OF TEXAS, Appellant

V.

BILL M. RANKIN, Appellee


On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 07C0483-005


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

On March 31, 2005, fifty-four-year-old Bill M. Rankin was demoted from his position as office manager in the Texarkana office of the Texas Attorney General (Abbott) to office supervisor in the Paris, Texas, office, allegedly because he had failed to meet child-support-collection quotas. On May 4, Rankin refused to take the Paris position and, as a result, was "constructively terminated" that day. Rankin's resulting administrative charge of age discrimination was filed October 12, 2005.[1] Abbott sought to dismiss Rankin's subsequent lawsuit for want of jurisdiction on the basis that Rankin had not timely filed his administrative charge of discrimination.[2]

We reverse the trial court's denial of that motion to dismiss and render judgment dismissing Rankin's suit for want of jurisdiction. Our ruling is based on our conclusion that Rankin was required, yet failed, to file suit within 180 days after he was told of his demotion.

---

[1]On October 12, 2005, the Equal Employment Opportunity Commission (EEOC) received Rankin's charge outlining a claim under the Age Discrimination in Employment Act of 1967 (ADEA). Rankin alleged he was replaced by a person under the age of forty and that a young manager who also failed to meet quotas was not terminated. In the space provided on the charge form to list a state agency, Rankin included the Texas Workforce Commission (TWC) Civil Rights Division and specified that he wanted the "charge filed with both the EEOC and the State or local agency." The EEOC was unable to conclude that a violation was established. On March 9, 2006, the EEOC issued a "Dismissal and Notice of Rights," commonly referred to as a right-to-sue letter.

[2]Abbott argued, *inter alia*, that the trial court lacked subject-matter jurisdiction because Rankin filed his employment discrimination charge more than 180 days after the alleged discriminatory act. This limitations period is mandated by Section 21.202 of the Texas Labor Code as essential to exhaustion of administrative remedies with the TWC.

2

*Our Standard of Review*

All courts must have subject-matter jurisdiction to hear the disputes before it. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Subject-matter jurisdiction may be raised for the first time on appeal and cannot be waived by the parties. *Id.* at 445. If a trial court lacked jurisdiction, the appellate court has jurisdiction only to set aside any judgment rendered by the trial court and to dismiss the cause. TEX. R. APP. P. 43.2(e); *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 278 (Tex. App.—El Paso 2005, no pet.); *Dallas County Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 468 (Tex. App.—Dallas 1994, writ denied). The claimant bears the burden of alleging facts that affirmatively show the trial court has subject-matter jurisdiction at all times. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *El Paso County v. Navarrete*, 194 S.W.3d 677, 683 (Tex. App.—El Paso 2006, pet. denied); *Vela v. Waco Indep. Sch. Dist.*, 69 S.W.3d 695, 698 (Tex. App.—Waco 2002, pet. withdrawn). Because jurisdiction is a question of law, we review de novo the trial court's ruling on a plea to the jurisdiction. *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007); *Reed v. Prince*, 194 S.W.3d 101, 105 (Tex. App.—Texarkana 2006, pet. denied).

Texas appellate courts "look to the pleader's intent" and liberally construe the plaintiff's allegations in favor of jurisdiction unless the face of the petition affirmatively demonstrates a lack of jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Vela*, 69 S.W.3d at 698; *Smith v. Univ. of Tex. Sw. Med. Ctr. of Dallas*, 101 S.W.3d 185, 188 (Tex. App.—Dallas 2003, no pet.). In other words,

3

dismissing a cause of action for lack of subject-matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Tex. Dep't of Protective & Regulatory Servs. v. Lynn*, No. 03-04-00635-CV, 2005 WL 1991809, at *4 (Tex. App.—Austin Aug. 16, 2005, pet. denied) (mem. op., not designated for publication); *Smith*, 101 S.W.3d at 188.

On the record before us, a lack of jurisdiction affirmatively appears. Before filing suit, Rankin was required to have exhausted his administrative remedies by filing his administrative charge of discrimination within 180 days of the alleged discriminatory event. This he failed to do.

*Rankin Was Required to Exhaust Administrative Remedies Before Filing Suit*

When the Legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction to determine the issues involved. *Ferrell*, 248 S.W.3d at 157; *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). The Texas Commission on Human Rights Act (the Act) established a comprehensive administrative review system to carry out the policies embodied in Title IV and the ADEA. TEX. LAB. CODE ANN. §§ 21.001, 21.051 (Vernon 2006); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991); *Vela*, 69 S.W.3d at 699. One important policy of the ADEA is exhaustion of administrative remedies before litigation. *Schroeder*, 813 S.W.2d at 487; *Vela*, 69 S.W.3d at 699. In furtherance of that policy, the Act created the TWC, as a deferral agency to the EEOC, and gave it the power to "receive, investigate, seek to conciliate, and pass on complaints" alleging age discrimination violations. TEX. LAB. CODE ANN. §§ 21.0015, 21.003, 21.051 (Vernon 2006).

4

Since the Act gives the TWC exclusive authority over age discrimination disputes, a person claiming employment discrimination must exhaust all administrative remedies before bringing a civil action in the district court. *Ferrell*, 248 S.W.3d at 157; *Thomas*, 207 S.W.3d at 340; *Schroeder*, 813 S.W.2d at 486; *Navarrete*, 194 S.W.3d at 682. This affords the TWC the opportunity to efficiently execute their goal of minimizing discrimination while reducing costly litigation. *Czerwinski v. Univ. of Tex. Health Sci. Ctr. at Houston Sch. of Nursing*, 116 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Navarrete*, 194 S.W.3d at 683. Until the party has satisfied this exhaustion requirement, the trial court lacks subject-matter jurisdiction. *Thomas*, 207 S.W.3d at 340.

An employee claiming to be aggrieved by an unlawful employment practice files a complaint, commonly referred to as a charge, with either the TWC or EEOC. TEX. LAB. CODE ANN. § 21.201 (Vernon 2006). The charge must be filed within 180 days of the alleged discriminatory practice. *Id*. A late-filed charge will be dismissed as untimely. TEX. LAB. CODE ANN. § 21.202 (Vernon 2006). Timeliness of the charge "shall be determined by the date on which the complaint is received by the EEOC." 40 TEX. ADMIN. CODE § 819.71 (2005) (Tex. Workforce Comm'n Civ. Rights Div.); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Tex. Tech Univ. v. Finley*, 223 S.W.3d 510, 514–15 (Tex. App.—Amarillo 2006, no pet.); *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 83 (Tex. App.—Fort Worth 2003, pet. denied). Filing within the limitations period is a mandatory prerequisite to filing a civil action alleging violations of the Act. *Schroeder*, 813 S.W.2d at 488. The Texas Supreme Court has stated that the Act does not provide

5

an "unconditional private right of action." *Id*.; *Vela*, 69 S.W.3d at 700. Therefore, a jurisdictional bar to a statutory discrimination claim in civil court is created if an employee fails to file a timely charge and fully pursue administrative remedies with the TWC. *Schroeder*, 813 S.W.2d at 488; *Vela*, 69 S.W.3d at 700; *Navarrete*, 194 S.W.3d at 682; *Czerwinski,* 116 S.W.3d at 121–22.

*The Limitations Period Began When Rankin Learned of His Demotion*

Limitations begins when the discriminatory acts are communicated, not when "the consequences of the acts become most painful." *Del. State Coll. v. Ricks,* 449 U.S. 250, 258 (1980). Thus, the 180-day limitations period for an employment discrimination complaint begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Specialty-Retailers, Inc.*, 933 S.W.2d at 493; *Cooper-Day*, 121 S.W.3d at 83, 85. The date of the discriminatory act controls, not some later date when the employee discovers the act is discriminatory. *See Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (rejecting theory that statute of limitations should begin to run when employee discovers discriminatory motive, rather than actual date of act itself); *Cruse v. Chicago Park Dist.*, No. 95 C 2882, 1995 WL 519735, at *2 (N.D. Ill. Aug. 31, 1995) (accrual date for discrimination claim when employee discovers injury, not when employee discovers injury is actionable). A new charging period does not begin with a subsequent nondiscriminatory act that causes some additional adverse effect resulting from the past discrimination. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127

6

S.Ct. 2162, 2164 (2007). For this reason, mere continuity of employment is insufficient to prolong the life of a cause of action for employment discrimination.

Rankin's complaint alleged that he was constructively terminated May 4, 2005, when he refused to take the demotion. Rankin was demoted March 31, 2005. While Rankin's administrative charge was filed within 180 days after the constructive termination, his demotion had occurred 195 days before his charge was filed. If age discrimination played a role in his demotion, and the termination was a mere consequence of his demotion, his charge is untimely. *See Cooper-Day*, 121 S.W.3d at 83. In analyzing this issue, we indulge every reasonable inference in favor of Rankin, assume all evidence favorable to him is true, and resolve any doubts in his favor. *See Reeves v. Houston Lighting & Power Co.*, 4 S.W.3d 374, 377 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Two cases are particularly instructive in analyzing this statutory limitations bar. In the first case, the United States Supreme Court explained the principle that continuity of employment will not toll the 180-day time period. *See Ricks*, 449 U.S. at 258. Ricks was a black Liberian that joined the university's education department in 1970. *Id*. at 252. In February 1973, the faculty committee recommended that Ricks be denied a tenured position. *Id*. The committee agreed to reconsider its decision the following year and, on March 13, 1974, reaffirmed the denial of tenure. *Id.* The committee offered Ricks a terminal contract which would expire in one year, officially ending the employment relationship. *Id.* at 253. Ricks filed a charge with the EEOC April 4, 1975, alleging

7

discrimination based on national origin in the denial of tenure and termination. *Id.* at 254. The United States Supreme Court ruled that Ricks' complaint was untimely and reasoned that, if Ricks wanted to complain about the denial of tenure, he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination. *Id*. at 257. Because Ricks' termination was a delayed, but inevitable, consequence of the denial of tenure, he could not complain the termination was a separate discriminatory act rather than the point at which the consequences of the acts became most painful. *Id.* at 257–59.

In the other instructive case, a woman worked in the finance department of a motor vehicle dealer. *See Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 489 (Tex. App.—Houston [1st Dist.] 2006, no pet.). On November 9, 2001, Davis received a corrective action in her file for her failure to meet performance standards and was told she could either transfer to the Internet department or be terminated due to poor performance. *Id.* Davis transferred and, in January 2002, quit her job because she was not receiving enough money. *Id.* In June 2002, Davis filed a charge of race and sex discrimination occurring between April 1, 2001, and January 2, 2002. *Id.* at 490. Autonation argued that Davis did not meet the 180-day requirement because she failed to file the charge within 180 days of her demotion. *Id.* Davis countered by stating she did not know the transfer was a demotion because she was unaware she would be receiving less money until receipt of her first pay check in December 2001. *Id.* at 491. In rejecting Davis' argument, the court held the demotion date triggered the 180-day statute of limitations. *Id.* at 492.

Here, Rankin received news of his demotion for failure to meet performance standards 195 days before he filed the charge with the EEOC. Rankin quit or was constructively terminated when he decided not to take the demotion. Rankin's employment separation was a consequence of his earlier demotion, rather than a separate discriminatory act. In other words, the self-inflicted termination was the point at which the consequences of the allegedly discriminatory demotion became most painful. *See Ricks*, 449 U.S. at 257–59. Thus, the limitations clock began to run on the day Rankin learned of his demotion. Since Rankin failed to identify any alleged discriminatory acts that continued until, or occurred at the time of, the actual constructive termination (May 4, 2005), limitations ran fifteen days before he filed the EEOC charge. *See id.* at 257; *Davis,* 226 S.W.3d at 492.[3]

_____

[3]We note, for the sake of completeness, that the law does provide some relief for those employees who make an effort to determine if discrimination played a role in the adverse action. Employment discrimination claims are subject to equitable tolling when an employee can show that, despite diligent efforts on his or her part, the employee was unable to obtain information necessary to determine the existence of his or her claim. *Cruse*, 1995 WL 519735, at *2. This is consistent with the language in *Ricks* stating, "the limitations periods should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes." *Ricks*, 449 U.S. at 258 n.9; *Tex. A & M Univ., Corpus Christi v. Vanzante*, 159 S.W.3d 791, 797 (Tex. App.—Corpus Christi 2005, no pet.). This tolling provision protects an employee who knows he or she has been injured, but is reasonably unaware that his or her injury was brought about by discriminatory means. *Id.* (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)). The discovery rule and fraudulent concealment can apply to toll the statute of limitations until the employee knows, or through reasonable diligence should have known, of the facts giving rise to a cause of action. *Lynn*, 2005 WL 1991809, at *6. Rankin failed to suggest such possibilities in this case.

It was Rankin's burden to demonstrate that the trial court had jurisdiction in his employment discrimination case. *See Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. filed).  Rankin failed to meet his burden.  Therefore, the trial court did not have subject-matter jurisdiction over Rankin's employment discrimination suit.

We vacate the trial court's order and dismiss the case for want of jurisdiction.


Josh R. Morriss, III
Chief Justice

Date Submitted:       October 8, 2008
Date Decided:        December 10, 2008

10