ACCEPTED
03-14-00071-CV
5072823
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/28/2015 5:43:34 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00071-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/28/2015 5:43:34 PM
JEFFREY D. KYLE
Clerk

## IN THE TEXAS COURT OF APPEALS
## FOR THE THIRD DISTRICT
## AUSTIN, TEXAS

**AUSTIN INDEPENDENT SCHOOL DISTRICT**,
Appellant,
v.

**ANDREW LOFTERS**,
Appellee.

## ON APPEAL FROM THE 419TH JUDICIAL DISTRICT COURT
## TRAVIS COUNTY, TEXAS
## CAUSE NO. D-1-GN-09-003078

## APPELLEE'S MOTION FOR REHEARING

**Potter Bledsoe, LLP**
Gary L. Bledsoe
State Bar No. 02476500
garybledsoe@sbcglobal.net
Harry G. Potter III
State Bar No. 16175300
hpotter@potterbledsoe.com
316 West 12th Street, Suite 307
Austin, Texas 78701
Tel: (512) 322-9992
Fax: (512) 322-0840
*Attorneys for Andrew Lofters*

**Table of Contents**

Table of Contents…………………………………………………………….... i

Index of Authorities……………………………………………………... ii

I. Issues Presented for Review……………………………………………… 1

II. Argument and Authorities………………………………………………… 2

    A. **Issue 1:** Did the Court err in deciding that the 180 day requirement for filing a charge with the EEOC or Workforce Commission started to run when Lofters was denied the opportunity to attend the Doctoral Program at the University of Texas?.................................................. 5

    B. **Issue 2:** Did the Court err in deciding that Lofters cannot maintain his Retaliation Claim?............................................................. 8

    C. **Issue 3:** Did the Court err in holding that Equitable Tolling Does Not Apply to the 180 day time period requirements in Texas?............... 13

  III. Prayer………………………………………………………….. 15

# Index of Authorities

## <u>Cases</u>

*Arters v. Univision Radio Broad. Tx. L.P.*,
   No. 3:07-CV-0957-D, 2009 WL 1313285, *6 (N.D. Tex. May 12, 2009)… 7


*Davis v. Autonation USA Corp.*,
   226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.)……. 14


*Elgaghil v. Tarrant Cnty. Junior Coll.*,
   45 S.W.3d 133, 142 (Tex. App. 2000)…………………………………… 10


*Gupta v. E. Tex. State Univ.*,
   654 F.2d 411, 414 (5th Cir. 1981)………………………………… 10, 11, 13


*Hennigan v. I.P. Petroleum Co., Inc.*,
   858 S.W.2d 371, 373 (Tex. 1993)………………………………………… 13


*Leach v. Baylor Coll. Of Med.*,
   No. H-07-0921, 2009 WL 385450, *18 (S.D. Tex. Feb. 17, 2009)……..... 7


*Ledbetter v. Goodyear Tire & Rubber Co.*,
   550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007),
   *overturned due to legislative action* (Jan. 29, 2009)…………………… 5, 6


*Messer v. Meno*,
   130 F.3d 130, 135 (5th Cir. 1997)………………………………………….. 8


*National R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)……………………………………………………… 8

*Prairie View A&M University v. Chatha*,
     381 S.W.3d 500 (Tex. 2012)…………………………………………….. 5, 7

*Reeves v. Sanderson*,
     530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)………………… 9

*San Antonio Water Sys. v. Odem*,
     No. 04-07-00130-CV, 2007 WL 2376147, at *2 (Tex. App. Aug. 22,
     2007)……………………………………………………………………… 11

*Sanchez v. Standard Brands, Inc.*,
     431 F.2d 455, 466 (5th Cir. 1970)…………………………………….… 10

*Santi v. University of Texas Health Science Center of Houston*,
     312 S.W. 3d 800, 805 (Tex. App.—Houston [1st.]…………………... 7, 8, 10

*Saucedo v. University of Texas at Brownsville*,
     958 F. Supp. 2d 761 (S.D. Tex. 2013)………………………………….. 5

*Texas Tech University v. Finley*,
     223 S.W.3d 510, 515 (Ct. App.—Amarillo, 2006)……………………… 13

*Thomas v. Clayton Williams Energy, Inc.*,
     2 S.W.3d 734, 738 (Tex. App. 1999)…………………………………. 11

## **Statutes**

Lilly Ledbetter Fair Pay Act of 2009, § 2 (2)……………………………………... 5, 6

40 Tex. Admin. Code. Ann. § 819.46…………………………………………… 3

42 U.S.C. § 2000e-5(e)(3)(A)…………………………………………………… 6

29 U.S.C. § 626(d)(3)……………………………………………………… 6

Appellee, Andrew Lofters, submits this motion for rehearing in response to the opinion issued by the Court on April 1, 2015, and requests that the Court consider the following issues:

## ISSUES PRESENTED FOR REVIEW

**Issue 1:** Did the Court err in deciding that the 180 day requirement for filing a charge with the EEOC or Workforce Commission started to run when Lofters was denied the opportunity to attend the Doctoral Program at the University of Texas?

**Issue 2:** Did the Court err in deciding that Lofters cannot maintain his Retaliation Claim?

**Issue 3:** Did the Court err in holding that Equitable Tolling Does Not Apply to the 180-day time period requirements in Texas?

1

## ARGUMENT & AUTHORITIES

Mr. Lofters was not aware of any discrimination when he was denied the ability to attend the Educational Doctoral program at the University of Texas at Austin. (C.R. 5). Lofters was seeking to obtain a doctoral degree in an area that was relevant to a partnership the district created as a result of the issues at Johnston. He accepted another position in the District and then observed another district employee in one of the classes. (C.R. 105-106). Lofters then made Open Records requests for information to make sure that he was correct and that the individuals were employees of the district not operating under special circumstances. (C.R. 152). He discovered on or about the 4th of April that there was an individual who he observed in his class who was still an employee of the district. (C.R. 222-254). After declining to permit Mr. Lofters to participate in the program, principal Hudson permitted a person of a different race and sex to participate in the program at the University of Texas. (C.R. 89-93, 172). Lofters went to the EEOC and filed a charge on or about July 25, 2008. (C.R. 99). Prior to that he had sent a letter on June 5th to the Human Resources Department of the District indicating that he felt he was being discriminated at in the district and that he planned to file EEOC charges. (C.R. 130). Lofters received a letter dated June 11, 2008, that informed him that his assignment had ended for the 2007-2008 school year (effective June 5th). (C.R. 138). Ironically, the staff were to be

2

notified about such matters the week of June 9th through June 16th according to AISD's plan. (C.R. 282-283). Also, the 5th of June was the day that all employees were to be contacted to determine their employment interests. (C.R. 281). Lofters thought that the timing was curious. (C.R. 50). Lofters filed 179 days after the January 28th date according to the Court's opinion. Lofters made an Open Records request to determine the viability of a complaint because seeing Oropez was not adequate to inform him if there was a valid claim. EEOC accepted his charge even though it had discretionary authority to dismiss the case as being untimely--and not accept charges. (40 Tex. Admin. Code. Ann. § 819.46). Lofters formally secured counsel and sent a letter to the EEOC to perfect his retaliation charge in November. (C.R. 291) It was formally filed in December. (C.R. 294). 40 TAC § 819.41 provides that complaints are adequate if they include:

> (d) The complaint shall set forth the following information:
>
>> (1) Harm experienced by the complainant as a result of the alleged unlawful employment practice;
>>
>> (2) Explanation, if any, given by the employer to the complainant for the alleged unlawful employment practice;
>>
>> (3) A declaration of unlawful discrimination under federal or state law;
>>
>> (4) Facts upon which the complaint is based, including the date, place, and circumstances of the alleged unlawful employment practice; and

> (5) Sufficient information to enable CRD to identify the employer, e.g., employer ID, business address, and business phone.

40 Tex. Admin. Code § 819.41. This was an amendment to a pre-existing complaint and clearly met those requisites. Subsequent to that Lofters provided information to the EEOC that detailed AISD's plan for employees and how it was effectively his termination.

AISD's plan was to have Human Resources be responsible for all employee matters regarding placement in regards to the Johnston employees. (C.R. 282-283 and see also C.R. 263). HR was required to meet with employees, assist them in finding jobs, ensure employees were invited to job fairs, and even facilitate interviews. It even required that they seek to place employees who have not been placed. (C.R. 281-283). Additionally, AISD was committed to maintaining Experienced Teachers. Dr. Lofters had the following experience at the time:

**Education**
1. B.S. (Chemistry-Teaching), University of Maryland (1987)
2. M.Ed. (Education Administration), University of Texas at Austin (2004)
3. Doctorate Program (CCLP), University of Texas at Austin (entering 2007)

**Texas Certification**
1. Teaching & Administrative

**Employment Experience**
4. Teacher (Johnston HS), Austin ISD (2007-2008)
5. Assistant Principal (Austin HS), Austin ISD (2004-2007)
6. Administrative Intern (served various campuses), Austin ISD (2002-2004)

4

7. Science Teacher (served various campuses), Austin ISD (1987-2002)

**Issue 1:** **Did the Court err in deciding that the 180-day requirement for filing a charge with the EEOC or Workforce Commission started to run when Lofters was denied the opportunity to attend the Doctoral Program at the University of Texas?**

*Prairie View A&M University v. Chatha*, 381 S.W.3d 500 (Tex. 2012), is a pay case like *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007), *overturned due to legislative action* (Jan. 29, 2009). It involves when the statute starts to run involving a pay case. In *Chatha*, the professor was aware of the discrimination but knowingly deferred the matter to the next year to see if the disparity would be fixed. In this case, Lofters was not aware of any discrimination. In fact, we do not know if Oropez was even in the program at the time that Lofters was told he could not participate in the program so how could he file a complaint of discrimination? *Saucedo v. University of Texas at Brownsville*, 958 F. Supp. 2d 761 (S.D. Tex. 2013) provides the proper interpretation of *Chatha*—the time starts to run when you discover the pay discrimination. What we know in this case is that Oropez was in the class in January but not whether he was in the program prior in time.

*Prairie View A&M University v. Chatha* and *Ledbetter* involve **compensation** decisions based on a discriminatory practice. Congress passed the Lilly Ledbetter Fair Pay Act in response to the United States Supreme Court's

5

Decision in *Ledbetter*.  Congress found that the *Ledbetter* decision "ignor[ed] the reality of wage discrimination and [was] at odds with the robust application of the civil rights laws that Congress intended."  Lilly Ledbetter Fair Pay Act of 2009, § 2 (2).  The Fair Pay Act provides that every paycheck that reflects the prior discriminatory decision triggers a new 180 day limitation period.  It applies to discriminatory decisions in **compensation** made on the basis of race, color, religion, sex, and national origin as well as age and disability.  *See* 42 U.S.C. § 2000e-5(e)(3)(A) (" For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."); 29 U.S.C. § 626(d)(3) ("For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including

6

each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."). Federal courts have interpreted the Fair Pay Act and held that it does not apply when it is not an act involving compensation. *See e.g., Leach v. Baylor Coll. Of Med.*, No. H-07-0921, 2009 WL 385450, *18 (S.D. Tex. Feb. 17, 2009); *see also Arters v. Univision Radio Broad. Tx. L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285, *6 (N.D. Tex. May 12, 2009) (holding that the Fair Pay Act only applies to "discriminatory compensation claims"). In *Prairie View A&M University v. Chatha*, the Texas Supreme Court answered the question of whether the Fair Pay Act applies to wage discrimination cases brought under the TCHRA. 381 S.W.3d 500 (Tex. 2012). It refused to adopt the federal standard created by Congress in the Fair Pay Act marking an important departure from the general practice in Texas of applying federal law and precedent to claims under the TCHRA. *Id.* The Texas Supreme Court held that the Fair Pay Act does not apply to discrimination claims brought under the TCHRA <u>"where pay discrimination complaints are concerned</u>." *Id*. at 506-507.

Another solid reason to determine that the 180-day requirement was met is that Texas courts, even recently, have held that "discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time." *Santi v.*

*University of Texas Health Science Center of Houston*, 312 S.W. 3d 800, 805 (Tex. App.—Houston [1st.].

Also, if we look at Mr. Hudson and his actions, it is clear that even if we were to analyze the claim as a discrete action, the action by Mr. Hudson that raises the issue of discrimination did not occur until after he had denied Mr. Lofters. (C.R. 89-93, 172). *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The limitations bar does not apply where discriminatory practices in promotion or transfer produce effects "that may not manifest themselves as individually discriminatory except in cumulation over a period of time. *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997). In *Meno* the court indicated that each promotion was a discrete action. In this case, Hudson's act of discrimination was too a discrete act that gave rise to a new, separate and discrete cause of action. An employee's complaint should be construed with the utmost liberality. *Santi*, supra at 805.

**Issue 2: Did the Court err in deciding that Lofters cannot maintain his Retaliation Claim?**

Lofters engaged in protected activity when he sent the letter to HR on or about the 5th of June. (C.R. 130). Curiously, the District sent him a letter bearing a date prior to the date when teachers were to be notified of the District's action. (C.R. 138). Nonetheless, HR was placed on notice of Mr. Lofters' intentions. Some

8

employees were maintained, so not every employee received the letter. (C.R. 139-141). And for the employees who did receive the letter, the district indicated it would place them elsewhere in the district as indicated above. In other words, the letters were not to be permanent but simply to put you on notice to find another job. HR, who received the complaint of retaliation from Mr. Lofters, was responsible for placing the employees. The district has suggested that it was the reorganization of Johnston that led to his termination, so the allegations the court describes as the Failure to Assist items were both the actual termination but also intended to show that the justification was a pretext and that they are part of the retaliatory termination and do not simply stand alone as separate and distinct adverse actions. The assistance issues became his termination because unlike the other teachers in his program, who were all kept on (C.R. 75), he was not treated like the others in his program, he was terminated and this reveals how the reason provided was a pretext. Defendant claims it was a reorganization but they would assist employees to stay. (C.R. p. 263). Mr. Lofters would not have been terminated but for the failure of the District to treat him as it did the other teachers in his program. In *Reeves v. Sanderson*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), the court laid out a 3rd way to prove discrimination and also a method to defeat claims like the district has put forward in this case that are intended to show a legitimate nondiscriminatory reason for the action at issue. There was no need to raise them

separate from the termination; however, they are matters that would be expected to grow out of a charge. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) and *Santi* at p. 635. We should note that as to the retaliatory discharge, the law has been and continues to be that there is no need to exhaust. In this case, when the district failed to make the June, July or August contacts to work with him to keep him employed he became a discharged employee. Just as in *Gupta*, which also involved a teacher, one must know that the original filing quite naturally might lead to the termination or failure to assist which was the termination. The Fifth Circuit has held that retaliation claims are exhausted when they "grow out of an earlier charge." *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (holding that the court could hear the unexhausted retaliation claim because it arose as a consequence of the complainant exhausting his religion and national origin discrimination claims). In such a case, the court maintains ancillary jurisdiction to hear the retaliation claim. *Id*.

Requiring a complainant to file two separate charges only creates a "needless procedural barrier"--contrary to the goal of Title VII, which is to eradicate discrimination through encouraging private lawsuits to help enforce its provisions. *Id*. Texas courts have followed *Gupta* holding that unexhausted retaliation claims are not jurisdictionally barred when they arise from an earlier charge of discrimination. *See, e.g., Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133,

10

142 (Tex. App. 2000) (relying on *Gupta* in holding that a separate administrative charge for the retaliation claim would be impractical and redundant); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App. 1999) (following *Gupta* and holding that because the retaliation claim arose due to the complainant filing a complaint with the EEOC and TCHR, the complainant was not required to also file a complaint on his retaliation claims to exhaust his administrative remedies). The San Antonio Court of Appeals has specifically held that the *Gupta* doctrine continues to apply. *San Antonio Water Sys. v. Odem*, No. 04-07-00130-CV, 2007 WL 2376147, at *2 (Tex. App. Aug. 22, 2007) ("In *Gupta,* the plaintiff properly filed two charges with the EEOC, the first alleging discrimination and the second alleging retaliation for filing the first charge. *Id.* at 412-13. He then filed suit against his employer. *Id.* at 413. After filing suit, the employer notified him that his teaching contract would not be renewed for the following year. *Id.* As a result, he alleged in his suit that the non-renewal of his contract was done in retaliation for his filing charges with the EEOC. *Id.* However, he did not file a separate charge with the EEOC alleging retaliatory discharge. *Id.* The court held that the lower court had ancillary jurisdiction to hear the retaliation claim because the claim grew out of an administrative charge that was properly before the lower court. *Id.* at 413-14.").

Once Lofters made known his complaint of discrimination on the 5th of June, it is logical to assume that since they were made to the Human Resources

Department that they may not provide the assistance that he was to be provided (in fact they did not even notify him of the availability of such initiatives). (C.R. C.R. 256-290[1], 314[2]). Moreover, Lofters did provide this information to the EEOC in his *Position Statement* which states in relevant part:

> And not only was his position discontinued, he was not given notice or other options that were made available to other persons who were subsequently told that their positions at Johnston High School were being eliminated. Though the Commissioner wanted a largely different staff in place at the school from the one that was there at the time of the closure, he did not order termination of contracts of the staff then at Johnston High School. Most of the members of the staff at Johnson who were high performers and not old enough to retire were permitted to remain with the school district. Lofters was not permitted to remain, however, so he left the district involuntarily. On information and belief the members of the staff who were retained did not have pending or current discrimination allegations against the Austin Independent School District.

(C.R. 328). The same logic appears here where we are talking about obligations on the district to ensure that Lofters maintained his employment. The consequence of not assisting Lofters was that he was discharged. That is why those matters are intended to be read as part of the discharge claim and how they clearly were

---

[1]*Plaintiff's Response to Defendant's Plea to the Jurisdiction* (Exhibit D - shows Johnston HS employees were supposed to receive assistance from the district that was not provided to Lofters).
[2] *Plaintiff's Response to Defendant's Plea to the Jurisdiction* ("As Mr. Lofters mentions in his affidavit, the benefits that other employers were to receive-such as meeting with the individual employees, inviting them to group meetings and helping them to identify jobs-was not provided to him.").

exhausted by the mere filing of the charge to the extent they needed to be exhausted. In other words, under *Gupta* there was no need to exhaust those issues. However, they were exhausted by the filing itself.

A complaint is considered filed even if it is not verified at the time of filing. *Hennigan v. I.P. Petroleum Co., Inc.*, 858 S.W.2d 371, 373 (Tex. 1993). Further, amendments to the original charge relate back to the date the original complaint was filed. *Hennigan*, supra at 373. In this case, the retaliation charge was filed no later than November 21st but should be considered filed in July. Plaintiff was pro se and went to file a discrimination charge and filed one on discrimination and simply amended it to include retaliation and the termination (which as expressed above did not have to be included). A letter is adequate to constitute a complaint. *Texas Tech University v. Finley*, 223 S.W.3d 510, 515 (Ct. App.—Amarillo, 2006).

**Issue 3: Did the Court err in holding that Equitable Tolling Does Not Apply to the 180-day time period requirements in Texas?**

The evidence will show that the comparator was in school with Lofters shortly before he filed. There is no evidence that either of the two comparators was in school when Lofters was rejected. It is like a man asking to work from home and being rejected, then a request from a woman being accepted 181 days later. We do not have a comparator until 181 days later so how could the discrimination charge have been filed previously. The person who initially denied Mr. Lofters had a comparator,

13

but only months later. The cases are very clear, that even though the 180-day requirement has been held to be jurisdictional, it can be equitably tolled. Tolling occurs when employers take action like withholding vital information. *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.) Equitable estoppel applies, for example, when the employer hides vital information. *Id.* at 493. *Davis* expressly holds that equitable estoppel is still available after acknowledging that in Texas the 180-day requirement has been held to be mandatory and jurisdictional. *Davis*, supra at 491.

Hudson told Lofters that the decision to deny his participation in the CCLP was not his decision, (C.R. 56-57), but in Hudson's affidavit he stated that the decision to deny Lofters' request was his. Hudson states in his affidavit: "...in **my decision** to deny his request for a schedule adjustment…." (C.R. 172). Hudson represented to Lofters that the denial was based on an ironclad rule but given that Ms. Garza was later allowed to attend this was clearly not true. The District did not permit Blacks to participate in opportunities such as the CCLP. (C.R. 59-60). And the Superintendent may have had the final word but Hudson preempted Lofters from going to the Superintendent by making it seem like the decision was standard across the board. The District also has a policy that prohibits this and they violated their own policy. (C.R. 111). In addition, during the course of these proceedings, AISD tendered a list that they alleged was assistant principals who were allowed to

14

undertake education opportunities, such as the CCLP, but that list turned out to be a list of teachers instead. (C.R. 80). The Fifth Circuit has recognized that tolling may be appropriate in situations in which the plaintiff is unaware of the facts giving rise to the claim because of the defendant's intentional concealment of them. The Texas Supreme Court has also recently cited a U.S. Supreme Court case holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit . . . but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *In re United Serv. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)).

<u>PRAYER</u>

For the reasons stated in this motion, appellee asks the Court to grant this motion for rehearing, withdraw its opinion, reverse the trial court's judgment, and either render judgment for appellee or reverse and remand for a new trial.

Respectfully submitted,

**Potter Bledsoe, LLP**

**___/s/ Gary L. Bledsoe___**
Gary L. Bledsoe
State Bar No. 02476500
garybledsoe@sbcglobal.net
Harry G. Potter III

15

State Bar No. 16175300
hpotter@potterbledsoe.com
316 West 12th Street, Suite 307
Austin, Texas 78701
Tel:  (512) 322-9992
Fax:  (512) 322-0840
*Attorneys for Andrew Lofters*

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2013 and contains 4338 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

**___/s/ Gary L. Bledsoe___**
Gary L. Bledsoe

## Certificate of Service

I certify that a true and correct copy of the foregoing document was served on counsel for Austin Independent School District today, April 28, 2015, through the court's electronic filing system and by email to the following addresses:

Jonathan G. Brush
jbrush@rmgllp.com
Richard A. Morris
rmorris@rmgllp.com
Rogers, Morris & Grover, L.L.P.
5718 Westheimer, Suite 1200
Houston, Texas 77057
Tel:  (713) 960-6000
Fax:  (713) 960-6025
*Attorneys for Austin Independent School District*

**___/s/ Gary L. Bledsoe___**
Gary L. Bledsoe