In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00149-CV


______________________________




GREG ABBOTT, ATTORNEY GENERAL OF THE 


STATE OF TEXAS, Appellant



V.



BILL M. RANKIN, Appellee




 


On Appeal from the 5th Judicial District Court


 Bowie County, Texas


Trial Court No. 07C0483-005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 On March 31, 2005, fifty-four-year-old Bill M. Rankin was demoted from his position as
office manager in the Texarkana office of the Texas Attorney General (Abbott) to office supervisor
in the Paris, Texas, office, allegedly because he had failed to meet child-support-collection quotas. 
On May 4, Rankin refused to take the Paris position and, as a result, was "constructively terminated"
that day. Rankin's resulting administrative charge of age discrimination was filed October 12, 2005. (1) 
Abbott sought to dismiss Rankin's subsequent lawsuit for want of jurisdiction on the basis that
Rankin had not timely filed his administrative charge of discrimination. (2)

 We reverse the trial court's denial of that motion to dismiss and render judgment dismissing
Rankin's suit for want of jurisdiction. Our ruling is based on our conclusion that Rankin was
required, yet failed, to file suit within 180 days after he was told of his demotion.


Our Standard of Review

 All courts must have subject-matter jurisdiction to hear the disputes before it. Tex. Ass'n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). Subject-matter jurisdiction may be
raised for the first time on appeal and cannot be waived by the parties. Id. at 445. If a trial court
lacked jurisdiction, the appellate court has jurisdiction only to set aside any judgment rendered by
the trial court and to dismiss the cause. Tex. R. App. P. 43.2(e); Juarez v. Tex. Ass'n of Sporting
Officials El Paso Chapter, 172 S.W.3d 274, 278 (Tex. App.--El Paso 2005, no pet.); Dallas County
Appraisal Dist. v. Funds Recovery, Inc., 887 S.W.2d 465, 468 (Tex. App.--Dallas 1994, writ
denied). The claimant bears the burden of alleging facts that affirmatively show the trial court has
subject-matter jurisdiction at all times. Tex. Ass'n of Bus., 852 S.W.2d at 446; El Paso County v.
Navarrete, 194 S.W.3d 677, 683 (Tex. App.--El Paso 2006, pet. denied); Vela v. Waco Indep. Sch.
Dist., 69 S.W.3d 695, 698 (Tex. App.--Waco 2002, pet. withdrawn). Because jurisdiction is a
question of law, we review de novo the trial court's ruling on a plea to the jurisdiction. Houston
Mun. Employees Pension Sys. v. Ferrell, 248 S.W.3d 151, 156 (Tex. 2007); Reed v. Prince, 194
S.W.3d 101, 105 (Tex. App.--Texarkana 2006, pet. denied).

 Texas appellate courts "look to the pleader's intent" and liberally construe the plaintiff's
allegations in favor of jurisdiction unless the face of the petition affirmatively demonstrates a lack
of jurisdiction. Tex. Ass'n of Bus., 852 S.W.2d at 446; Vela, 69 S.W.3d at 698; Smith v. Univ. of Tex.
Sw. Med. Ctr. of Dallas, 101 S.W.3d 185, 188 (Tex. App.--Dallas 2003, no pet.). In other words,
dismissing a cause of action for lack of subject-matter jurisdiction is proper only when it is
impossible for the plaintiff's petition to confer jurisdiction on the trial court. Tex. Dep't of Protective 
& Regulatory Servs. v. Lynn, No. 03-04-00635-CV, 2005 WL 1991809, at *4 (Tex. App.--Austin
Aug. 16, 2005, pet. denied) (mem. op., not designated for publication); Smith, 101 S.W.3d at 188. 

 On the record before us, a lack of jurisdiction affirmatively appears. Before filing suit,
Rankin was required to have exhausted his administrative remedies by filing his administrative
charge of discrimination within 180 days of the alleged discriminatory event. This he failed to do.

Rankin Was Required to Exhaust Administrative Remedies Before Filing Suit

 When the Legislature grants an administrative body the sole authority to make an initial
determination in a dispute, the agency has exclusive jurisdiction to determine the issues involved. 
Ferrell, 248 S.W.3d at 157; Thomas v. Long, 207 S.W.3d 334, 340 (Tex. 2006). The Texas
Commission on Human Rights Act (the Act) established a comprehensive administrative review
system  to  carry  out  the  policies  embodied  in  Title  IV  and  the  ADEA.  Tex.  Lab.  Code
 Ann. §§ 21.001, 21.051 (Vernon 2006); Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 485
(Tex. 1991); Vela, 69 S.W.3d at 699. One important policy of the ADEA is exhaustion of
administrative remedies before litigation. Schroeder, 813 S.W.2d at 487; Vela, 69 S.W.3d at 699. 
In furtherance of that policy, the Act created the TWC, as a deferral agency to the EEOC, and gave
it the power to "receive, investigate, seek to conciliate, and pass on complaints" alleging age
discrimination violations. Tex. Lab. Code Ann. §§ 21.0015, 21.003, 21.051 (Vernon 2006). 

 Since the Act gives the TWC exclusive authority over age discrimination disputes, a person
claiming employment discrimination must exhaust all administrative remedies before bringing a civil
action in the district court. Ferrell, 248 S.W.3d at 157; Thomas, 207 S.W.3d at 340; Schroeder, 813
S.W.2d at 486; Navarrete, 194 S.W.3d at 682. This affords the TWC the opportunity to efficiently
execute their goal of minimizing discrimination while reducing costly litigation. Czerwinski v. Univ.
of Tex. Health Sci. Ctr. at Houston Sch. of Nursing, 116 S.W.3d 119, 121 (Tex. App.--Houston
[14th Dist.] 2002, pet. denied); Navarrete, 194 S.W.3d at 683. Until the party has satisfied this
exhaustion requirement, the trial court lacks subject-matter jurisdiction. Thomas, 207 S.W.3d at 340.

 An employee claiming to be aggrieved by an unlawful employment practice files a complaint,
commonly referred to as a charge, with either the TWC or EEOC. Tex. Lab. Code Ann. § 21.201
(Vernon 2006). The charge must be filed within 180 days of the alleged discriminatory practice. 
Id. A late-filed charge will be dismissed as untimely. Tex. Lab. Code Ann. § 21.202 (Vernon
2006). Timeliness of the charge "shall be determined by the date on which the complaint is received
by the EEOC." 40 Tex. Admin. Code § 819.71 (2005) (Tex. Workforce Comm'n Civ. Rights Div.);
Specialty Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996); Tex. Tech Univ. v.
Finley, 223 S.W.3d 510, 514-15 (Tex. App.--Amarillo 2006, no pet.); Cooper-Day v. RME
Petroleum Co., 121 S.W.3d 78, 83 (Tex. App.--Fort Worth 2003, pet. denied). Filing within the
limitations period is a mandatory prerequisite to filing a civil action alleging violations of the Act. 
Schroeder, 813 S.W.2d at 488.  The Texas Supreme Court has stated that the Act does not provide
an "unconditional private right of action." Id.; Vela, 69 S.W.3d at 700. Therefore, a jurisdictional
bar to a statutory discrimination claim in civil court is created if an employee fails to file a timely
charge and fully pursue administrative remedies with the TWC. Schroeder, 813 S.W.2d at 488;
Vela, 69 S.W.3d at 700; Navarrete, 194 S.W.3d at 682; Czerwinski, 116 S.W.3d at 121-22. 

The Limitations Period Began When Rankin Learned of His Demotion

 Limitations begins when the discriminatory acts are communicated, not when "the
consequences of the acts become most painful."  Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980). 
Thus, the 180-day limitations period for an employment discrimination complaint begins when the
employee is informed of the allegedly discriminatory employment decision, not when that decision
comes to fruition. Specialty-Retailers, Inc., 933 S.W.2d at 493; Cooper-Day, 121 S.W.3d at 83, 85.
The date of the discriminatory act controls, not some later date when the employee discovers the act
is discriminatory. See Merrill v. S. Methodist Univ., 806 F.2d 600, 605 (5th Cir. 1986) (rejecting
theory that statute of limitations should begin to run when employee discovers discriminatory
motive, rather than actual date of act itself); Cruse v. Chicago Park Dist., No. 95 C 2882, 1995 WL
519735, at *2 (N.D. Ill. Aug. 31, 1995) (accrual date for discrimination claim when employee
discovers injury, not when employee discovers injury is actionable). A new charging period does
not begin with a subsequent nondiscriminatory act that causes some additional adverse effect
resulting from the past discrimination. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127
S.Ct. 2162, 2164 (2007). For this reason, mere continuity of employment is insufficient to prolong
the life of a cause of action for employment discrimination. 

 Rankin's complaint alleged that he was constructively terminated May 4, 2005, when he
refused to take the demotion. Rankin was demoted March 31, 2005. While Rankin's administrative
charge was filed within 180 days after the constructive termination, his demotion had occurred 195
days before his charge was filed. If age discrimination played a role in his demotion, and the
termination  was  a  mere  consequence  of  his  demotion,  his  charge  is  untimely.  See  Cooper-Day, 121 S.W.3d at 83. In analyzing this issue, we indulge every reasonable inference in favor of
Rankin, assume all evidence favorable to him is true, and resolve any doubts in his favor. See
Reeves v. Houston Lighting & Power Co., 4 S.W.3d 374, 377 (Tex. App.--Houston [1st Dist.] 1999,
pet. denied). 

 Two cases are particularly instructive in analyzing this statutory limitations bar. In the first
case, the United States Supreme Court explained the principle that continuity of employment will
not toll the 180-day time period. See Ricks, 449 U.S. at 258. Ricks was a black Liberian that joined
the university's education department in 1970. Id. at 252. In February 1973, the faculty committee
recommended that Ricks be denied a tenured position. Id. The committee agreed to reconsider its
decision the following year and, on March 13, 1974, reaffirmed the denial of tenure. Id. The
committee offered Ricks a terminal contract which would expire in one year, officially ending the
employment relationship. Id. at 253. Ricks filed a charge with the EEOC April 4, 1975, alleging
discrimination based on national origin in the denial of tenure and termination. Id. at 254. The
United States Supreme Court ruled that Ricks' complaint was untimely and reasoned that, if Ricks
wanted to complain about the denial of tenure, he should have identified the alleged discriminatory
acts that continued until, or occurred at the time of, the actual termination. Id. at 257. Because
Ricks' termination was a delayed, but inevitable, consequence of the denial of tenure, he could not
complain the termination was a separate discriminatory act rather than the point at which the
consequences of the acts became most painful. Id. at 257-59. 

 In the other instructive case, a woman worked in the finance department of a motor vehicle
dealer. See Davis v. Autonation USA Corp., 226 S.W.3d 487, 489 (Tex. App.--Houston [1st Dist.]
2006, no pet.). On November 9, 2001, Davis received a corrective action in her file for her failure
to meet performance standards and was told she could either transfer to the Internet department or
be terminated due to poor performance. Id. Davis transferred and, in January 2002, quit her job
because she was not receiving enough money. Id. In June 2002, Davis filed a charge of race and
sex discrimination occurring between April 1, 2001, and January 2, 2002. Id. at 490. Autonation
argued that Davis did not meet the 180-day requirement because she failed to file the charge within
180 days of her demotion. Id. Davis countered by stating she did not know the transfer was a
demotion because she was unaware she would be receiving less money until receipt of her first pay
check in December 2001. Id. at 491. In rejecting Davis' argument, the court held the demotion date
triggered the 180-day statute of limitations. Id. at 492. 

 Here, Rankin received news of his demotion for failure to meet performance standards 195
days before he filed the charge with the EEOC. Rankin quit or was constructively terminated when
he decided not to take the demotion. Rankin's employment separation was a consequence of his
earlier demotion, rather than a separate discriminatory act. In other words, the self-inflicted
termination was the point at which the consequences of the allegedly discriminatory demotion
became most painful. See Ricks, 449 U.S. at 257-59. Thus, the limitations clock began to run on
the day Rankin learned of his demotion. Since Rankin failed to identify any alleged discriminatory
acts that continued until, or occurred at the time of, the actual constructive termination (May 4,
2005), limitations ran fifteen days before he filed the EEOC charge. See id. at 257; Davis, 226
S.W.3d at 492. (3)

 It was Rankin's burden to demonstrate that the trial court had jurisdiction in his employment
discrimination case. See Bartosh v. Sam Houston State Univ., 259 S.W.3d 317, 321 (Tex.
App.--Texarkana 2008, pet. filed). Rankin failed to meet his burden. Therefore, the trial court did
not have subject-matter jurisdiction over Rankin's employment discrimination suit.

 We vacate the trial court's order and dismiss the case for want of jurisdiction. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 8, 2008

Date Decided: December 10, 2008
1. On October 12, 2005, the Equal Employment Opportunity Commission (EEOC) received
Rankin's charge outlining a claim under the Age Discrimination in Employment Act of 1967
(ADEA). Rankin alleged he was replaced by a person under the age of forty and that a young
manager who also failed to meet quotas was not terminated. In the space provided on the charge
form to list a state agency, Rankin included the Texas Workforce Commission (TWC) Civil Rights
Division and specified that he wanted the "charge filed with both the EEOC and the State or local
agency." The EEOC was unable to conclude that a violation was established. On March 9, 2006,
the EEOC issued a "Dismissal and Notice of Rights," commonly referred to as a right-to-sue letter.
2. Abbott argued, inter alia, that the trial court lacked subject-matter jurisdiction because
Rankin filed his employment discrimination charge more than 180 days after the alleged
discriminatory act. This limitations period is mandated by Section 21.202 of the Texas Labor Code
as essential to exhaustion of administrative remedies with the TWC.
3. We note, for the sake of completeness, that the law does provide some relief for those
employees who make an effort to determine if discrimination played a role in the adverse action. 
Employment discrimination claims are subject to equitable tolling when an employee can show that,
despite diligent efforts on his or her part, the employee was unable to obtain information necessary
to determine the existence of his or her claim. Cruse, 1995 WL 519735, at *2. This is consistent
with the language in Ricks stating, "the limitations periods should not commence to run so soon that
it becomes difficult for a layman  to  invoke  the  protection  of  the  civil  rights  statutes."  Ricks,
 449  U.S.  at  258  n.9; Tex. A & M Univ., Corpus Christi v. Vanzante, 159 S.W.3d 791, 797 (Tex.
App.--Corpus Christi 2005, no pet.). This tolling provision protects an employee who knows he
or she has been injured, but is reasonably unaware that his or her injury was brought about by
discriminatory means. Id. (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir.
1990)). The discovery rule and fraudulent concealment can apply to toll the statute of limitations
until the employee knows, or through reasonable diligence should have known, of the facts giving
rise to a cause of action. Lynn, 2005 WL 1991809, at *6. Rankin failed to suggest such possibilities
in this case.



weight: bold">The Topes Failed To Raise A Fact Issue Concerning Substantial Past Contact
            The Topes argue, in their second point of error, the trial court erred in concluding they lacked
"substantial past contact" with the children. 
            We will review de novo the trial court's ruling.


 In Tex. Dep't of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226–27 (Tex. 2004), the Texas Supreme Court explained the appropriate
standard of review when evidence is presented in support of a plea to the jurisdiction.


 Whether a
court has subject-matter jurisdiction is an issue of law, which is reviewed de novo. Tex. Dep't of
Transp. v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004); Miranda, 133 S.W.3d at 226;
Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); see SSJ-J, 153
S.W.3d at 134 (standing to bring an original suit affecting the parent-child relationship reviewed
de novo); Chavez v. Chavez, 148 S.W.3d 449, 455 (Tex. App.—El Paso 2004, no pet.) (standing to
intervene reviewed de novo). When a plea to the jurisdiction challenges the existence of
jurisdictional facts, courts should consider relevant evidence submitted by the parties if necessary
to resolve the issues raised. Miranda, 133 S.W.3d at 227. The trial court should examine the
relevant evidence to determine whether a fact issue exists. Id. If a genuine issue of material fact
exists, the trial court should not grant the plea to the jurisdiction and the jurisdictional issues should
be resolved by the fact-finder. Id. at 228. Any fact issue must be settled by the jury. See County of
Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002). However, if the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea
to the jurisdiction as a matter of law. Id. 
            Standing to file an original petition for adoption is statutorily defined under the Texas Family
Code. Section 102.005 provides:
An original suit requesting only an adoption or for termination of the
parent-child relationship joined with a petition for adoption may be filed by:
(1) a stepparent of the child; 
(2) an adult who, as the result of a placement for adoption, has had
actual possession and control of the child at any time during the 30-day
period preceding the filing of the petition;
(3) an adult who has had actual possession and control of the child
for not less than two months during the three-month period preceding the
filing of the petition; or
(4) another adult whom the court determines to have had substantial
past contact with the child sufficient to warrant standing to do so.

Tex. Fam. Code Ann. § 102.005 (Vernon 2002). The Topes contend they have standing to file an
original petition for adoption because they had "substantial past contact" with the children. We
emphasize that, under Section 102.005(4), the Topes have the same status as any adult with
"substantial past contact."



            What constitutes "substantial past contact" is not statutorily defined, and our search of the
caselaw has not revealed any caselaw definition. Noting that other subsections of the Texas Family
Code require "possession and control," the Tyler court has interpreted "substantial past contact" as
not requiring control over the child. Rodarte v. Cox, 828 S.W.2d 65, 69–70 (Tex. App.—Tyler 1991,
writ denied). Although the Topes urge this Court to develop a standard for evaluating substantial
past contact, we decline to do so. The existence of "substantial past contact" is inherently a
fact-intensive inquiry for which it will be difficult, if not impossible, to formulate a concise standard
or comprehensive factors. We agree with the Tyler court that the Legislature intended the standard
to be flexible in order to deal with "inevitable situations which could not be otherwise anticipated
by the drafters." Id. at 70.
            Although the Topes presented evidence of the difficulties in maintaining contact with their
grandchildren,


 we believe our inquiry should be focused on the amount of actual contact which
occurred, rather than the difficulties encountered in maintaining contact. The focus is on the amount
of contact the children have had with the adults. While the Topes may well have done the best they
could in maintaining contact with their grandchildren, the fact remains that the actual contact was
extremely minimal. The Topes exchanged correspondence


 and monthly telephone calls with Cole
and her children. Specifically, the Topes would send gifts and cards for various occasions and
holidays. Most of this correspondence could be more fairly characterized as contact with the mother
rather than contact with the children, particularly considering the ages of the children.


 The Topes
had only physically met their older grandchild on two occasions and had never seen their younger
grandchild. Lindsay testified she was not even aware she had a second grandchild until March 2004. 
            Under any conceivable definition of "substantial past contact," the Topes lack substantial
contact with the children. "Substantial" is defined as "of ample or considerable amount, quantity,
size, etc." Random House Dictionary of the English Language 1897 (unabridged 2nd ed.
1987). Even assuming the facts alleged by the Topes are true, the evidence does not raise a fact issue
on substantial past contact. Texas cases in which substantial past contact has been found have
involved considerably more contact than the contact alleged in this case.


 The Topes had only met
the older child twice, and were not even aware their daughter had another child until March 2004
after the children were in custody of CPS. Although there was evidence of telephone calls, cards,
and letters, such interaction is too minimal under the circumstances of this case to create a fact issue
concerning substantial contact. Even when viewed in a light most favorable to the Topes, the Topes
did not have substantial past contact with the children as a matter of law. We overrule the Topes'
second point of error.
Because the Topes Lacked Standing as a Matter of Law, There is no Need to Decide Whether
Trial Court Abused its Discretion in Holding the Hearing Before Discovery

            In their third point of error, the Topes argue the trial court erred in holding a hearing before
discovery occurred. Because the policy behind discovery is to prevent "trial by ambush,"


 the Topes
argue the trial court abused its discretion in ruling on the issue of whether CPS withheld consent
without good cause before discovery.
            If the party has standing under Section 102.005, the party may still not be eligible to file an
original petition. If both the child's parents have had their parental rights terminated, standing to file
an original petition for adoption is limited by Section 102.006. Section 102.006 provides:
(a) Except as provided by Subsection (b), if the parent-child relationship
between the child and every living parent of the child has been terminated, an
original suit may not be filed by:
(1) a former parent whose parent-child relationship with the child has
been terminated by court order;
(2) the father of the child; or
(3) a family member or relative by blood, adoption, or marriage of
either a former parent whose parent-child relationship has been terminated or
of the father of the child.
(b) The limitations on filing suit imposed by this section do not apply to a
person who:
(1) has a continuing right to possession of or access to the child under
an existing court order; or
(2) has the consent of the child's managing conservator, guardian, or
legal custodian to bring the suit.

Tex. Fam. Code Ann. § 102.006 (Vernon 2002). CPS argues that the Topes lack standing because
the children's parents had their parental rights terminated before the suit. However, CPS could
consent to the adoption under one of the exceptions to this limitation on standing. The Topes argue
that CPS is withholding consent without good cause and that the trial court should have waived the
requirement of consent in the best interests of the children. See Chapman v. Home, 561 S.W.2d 265,
267 (Tex. Civ. App.—Fort Worth 1978, no writ) (interpreting former Section 16.04). 
            Our disposition of this matter obviates the need to address this point of error. Section
102.006 merely bars certain parties from filing suit who would otherwise have standing to file the
suit. See Tex. Fam. Code Ann. § 102.006. Because the Topes lack standing, as a matter of law,
under Section 102.005, there is no need to decide whether Section 102.006 prohibited the Topes
from filing an original petition for adoption. Further, there is no need to decide whether the trial
court abused its discretion in ruling on the motion before discovery because the Topes would not
have standing under Section 102.005 even if an exception to Section 102.066 applied.
Conclusion
            We agree with CPS that standing, as a component of subject-matter jurisdiction, can be
challenged by procedural means other than summary judgment. Even when viewed in a light most
favorable to the Topes, the Topes failed to raise a fact issue concerning whether they had substantial
past contact with the children they sought to adopt. The trial court did not err in ruling, as a matter
of law, that the Topes lacked standing. For the reasons stated, we affirm the judgment of the trial
court.
 

                                                                        Jack Carter
                                                                        Justice



CONCURRING IN PART, DISSENTING IN PART

            The majority concludes that standing can be challenged through means other than summary
judgment and that the Topes lacked substantial contact with the children as a matter of law. I concur
that standing can be challenged through procedural means other than a motion for summary
judgment. I respectfully dissent in part, however, because I believe a fact issue exists concerning
whether the Topes had substantial past contact with their grandchildren.
A Fact Issue Exists Concerning Substantial Past Contact
            I agree with the majority that the standard of review is de novo. I disagree, though, that there
is no fact issue concerning substantial past contact. If a fact issue exists, the trial court is prohibited
from granting the plea to the jurisdiction and the fact issue must be presented to the fact-finder at
trial. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004); see County of
Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002). The trial court is only permitted to rule on the
fact issue as a matter of law. 
            I also agree with the majority that what constitutes "substantial past conduct" must be a
flexible standard to encompass unforeseeable situations. See Rodarte v. Cox, 828 S.W.2d 65, 69–70
(Tex. App.—Tyler 1991, writ denied). And, while the majority admits that the determination of
whether "substantial past contact" has occurred is a fact-intensive inquiry, it concludes the contact
in this case was not sufficient to be substantial contact as a matter of law. I disagree.
            While there may be those circumstances where "substantial past contact" does not exist as
a matter of law, this case is not one of them. Reasonable people could disagree on whether regular
correspondence, monthly telephone calls, and the sending of gifts and cards for special occasions and
holidays by grandparents in Montana to their grandchildren in Texas, and personal contact by those
grandparents with one of their grandchildren on two occasions, constitute "substantial past contact." 
This evidence is enough to create a fact issue. 
            The majority points out that, under Section 102.005(4), the Topes have the same status as any
adult with "substantial past contact." I agree that grandparents are not specifically listed in that
provision as having standing to file a petition for adoption. I disagree, however, with the majority's
conclusion that the Topes' status as grandparents is of no legal consequence in determining whether
they have standing. (See slip opinion, p. 8, footnote 6). Their status as grandparents is a fact that
cannot be ignored, and should be affirmatively considered, along with all other facts, in determining
substantial past contact. It is at least relevant in weighing the grandparents' testimony on this issue. 
            The majority also states that, "Texas cases in which substantial past contact has been found
have involved considerably more contact than the contact alleged in this case," and cites a number
of such cases in a footnote. However, the finding of substantial past contact in each and every case
cited was made after a full trial on the merits, not at a preliminary hearing on a plea to the
jurisdiction. This is what the Topes are entitled to in this case—to have this issue submitted to a
fact-finder. They may not prevail, but they are entitled to have their day in court. I would sustain
the Topes' second point of error.
The Trial Court Abused its Discretion in Holding the Hearing Before Discovery
            According to CPS, the Topes lack standing because the children's parents had their parental
rights terminated before the suit. See Tex. Fam. Code Ann. § 102.006 (Vernon 2002). CPS,
though, could consent to the adoption under one of the exceptions to this limitation on standing. See
id. Despite a prior request to CPS to be notified of any proceedings,


 the Topes were not notified
by CPS concerning the parental termination proceedings.


 The Topes did not learn of the
termination of Melissa Cole's and her husband's parental rights until January 5, 2005. Lindsay
contacted CPS and was informed there was nothing she could do. It is undisputed that CPS did not
undertake a home study on the Topes or request that Montana CPS undertake such a study. The
record contains no evidence concerning why CPS withheld consent to the adoption. The Topes
argue the trial court should have waived the requirement of consent because Brazoria County is
withholding consent without good cause and waiver of the consent would be in the best interests of
the children. Chapman v. Home, 561 S.W.2d 265, 267 (Tex. Civ. App.—Fort Worth 1978, no writ)
(court can waive consent under former Section 16.04 of Texas Family Code). The trial court found
there was no evidence the "movant's failure to consent to respondents' petition for adoption was not
in good faith." 
            I believe the trial court abused its discretion in ruling on the motion before discovery. 
"Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or
should await a fuller development of the merits of the case must be left largely to the trial court's
sound exercise of discretion." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). A
trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference
to guiding rules and principles. Narvaez v. Maldonado, 127 S.W.3d 313, 319 (Tex. App.—Austin
2004, no pet.). The trial court may have been able to waive the requirement that a managing
conservator consent to the filing of the adoption petition if the consent was withheld without good
cause and waiver of consent is in the best interest of the child.


 Discovery is intended to prevent
"trial by ambush." See Gutierrez v. Dallas Indep. Sch. Dist., 729 S.W.2d 691, 693 (Tex. 1987). 
Without discovery, a ruling on whether Brazoria County withheld consent without good cause is
premature. Further, whether the waiver of consent is in the best interests of the children is clearly
a fact issue which must be decided by the fact-finder. I would sustain the Topes' third point of error.
Conclusion
            Although I concur with the majority that standing can be challenged through procedural
means other than summary judgment and that we should review de novo the trial court's ruling on
standing, I believe a fact issue exists concerning whether the Topes had substantial past contact. I
believe the trial court erred in dismissing the Topes' suit at this point in the proceedings. The issue
of "substantial past contact" should have been allowed to proceed to trial. Further, the trial court
abused its discretion in ruling on the issue of whether CPS withheld consent without good cause
before discovery. I would reverse the judgment of the trial court and remand for further proceedings. 
            I concur in part and respectfully dissent in part.



                                                                        Donald R. Ross
                                                                        Justice
 
Date Submitted:          April 20, 2006
Date Decided:             May 16, 2006