**Opinion issued March 12, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00233-CV**

———————————

**DAVID DOTSON, Appellant**

**V.**

**TPC GROUP, INC. AND TPC GROUP, LLC, Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-04900**

---

## MEMORANDUM OPINION

David Dotson appeals the trial court's rendition of summary judgment in favor of Appellees TPC Group, Inc. and TPC Group, LLC ("TPC"). Dotson sued TPC for unlawful termination, alleging that TPC discriminated against him on the basis of his race and retaliated against him for complaining about coworkers' inappropriate conduct, in violation of the Texas Commission on Human Rights Act

("TCHRA"). TPC moved for summary judgment on no-evidence and traditional grounds, and the trial court granted the motion. In four issues, Dotson contends that the trial court erred in granting summary judgment in favor of TPC and in striking his amended response and portions of his summary judgment evidence. We affirm.

## Background

Dotson, an African-American male, began working for TPC as a financial analyst in the Supply Chain division at the Houston plant in October 2009. He reported to Robert Mershon.

### *Dotson Complains to Human Resources*

During the course of his employment, Dotson complained to HR about two racial comments made by coworkers. First, in April 2010, Dotson alleged that Gary Henneke, a coworker, created a noose with a telephone cord and dangled it under a table during a meeting while Dotson was speaking. It is undisputed that Lisa McCorquodale, the Human Resources Manager for TPC's Houston plant, investigated Dotson's allegation about Henneke. McCorquodale met with Henneke, along with two employees who had been present at the meeting. McCorquodale could not substantiate Dotson's allegation regarding the noose, but did substantiate that Henneke had spoken to Dotson in a threatening manner. As a result, Henneke received a final written warning.

Second, a few months later, Dotson complained that Robert Stone, another coworker, told him, "Don't get caught outside at night after dark," after Dotson mentioned an upcoming trip to TPC's Port Neches plant. Dotson reported the incident to McCorquodale and Mershon, and it is undisputed that McCorquodale investigated the complaint by questioning Stone and other witnesses.

Dotson also complained to HR that three supply chain managers held a meeting in September 2010 to "get rid of" Dotson. McCorquodale investigated the complaint but could not substantiate the allegation.

### *TPC Redefines Dotson's Role*

Dotson's September 29, 2010 performance evaluation explained that Dotson would change roles because he lacked skills necessary to perform satisfactorily in his current role. It states:

> Subsequent to the completion of the review period, it was determined that David's current experience level and skill sets were not consistent with the needs of the Supply Chain organization. A departmental reorganization was in the planning stage and was accelerated to redefine David's role to be more in line with his current experience and skills. The change places David in a role where he has the ability to be successful and allows him time to expand his industry experience and skills through working with additional functional areas, involvement in special projects and integrating himself, over time, in operating aspects of these departments.

Dotson's new role focused on supporting TPC's Port Neches and Baytown plants from a fixed cost standpoint. Dotson entered this role full-time in December 2010. Because Dotson's new job assignment required travel between plants, TPC

3

issued him a company credit card to use for rental cars, gasoline, and meals while traveling.

Dotson's use of the TPC credit card was subject to TPC's Travel, Entertainment, and Expense ("TEE") Policy, which states:

- "Employees must only incur expenses that are reasonable and necessary to conduct Company business."

- "Disregard of Company policies and guidelines or altering receipts can result in disciplinary action up to and including termination."

- "This policy does not cover every situation that may be encountered regarding travel and entertainment related expenditures. Each employee is expected to exercise sound judgment regarding travel and entertainment expenses and to obtain appropriate written approval from a Senior Leadership Team member for any expenditure(s) not specifically covered under this policy."

- "The Expense Report must clearly state the business purpose of all expenditures and the names, positions and affiliations of the receipts of any meals or entertainment. It should have original receipts attached to substantiate all expenditures, and be approved at the appropriate level by Company management. Receipts *must* be attached for all expenditures over $25.00."

- "By signing the Expense Report, the submitter certifies that all expenditures included in the Expense Report were incurred for Company business purposes, are in compliance with the Company's policies, and that the submitter incurred the expense."

- When renting cars, "[t]he approved class of car is full-size. Travelers should generally take advantage of cost-saving fueling options."

### TPC Investigates Dotson's Expense Reports

In May 2011, Mershon requested that McCorquodale assist him in reviewing Dotson's travel expenses. In support of their motion for summary judgment, TPC offered McCorquodale's affidavit in which she detailed several ways in which Dotson's expense reports violated TPC policy:

- Dotson falsely represented that he attended certain meetings in Port Neches and Baytown.

- Dotson rented sports utility vehicles, despite the policy requiring employees to rent full size cars, and often kept rental cars over weekends.

- Dotson overcharged TPC for mileage and gasoline.

Mershon and McCorquodale met with Dotson on June 3, 2011 to discuss his expense reports. At the meeting, they presented Dotson with a spreadsheet detailing the suspect expense reports. Dotson was unable to explain many of the expenses, but requested the opportunity to review the expense reports and contact the rental car company to refresh his memory. Mershon and McCorquodale denied him that opportunity, and based on their review of Dotson's expenses and Dotson's failure to satisfactorily explain the questioned charges, Mershon terminated Dotson's employment "for falsifying company records."

### Dotson Sues TPC

On August 16, 2011, Dotson filed a Charge of Discrimination with the EEOC and Texas Workforce Commission ("TWC"), alleging that TPC

discriminated against him because of his race and retaliated against him for opposing unlawful employment practices by complaining about other employees' conduct and inappropriate racial comments.

On January 26, 2013, Dotson sued TPC, alleging that TPC discriminated against him because of his race and retaliated against him, in violation of the TCHRA. TPC filed its combined no-evidence and traditional motion for summary judgment on December 23, 2013. TPC argued that Dotson could not raise a genuine issue of material fact regarding any of his claims and that his race discrimination claims were barred by limitations.

The motion was set for submission on January 13, 2014. The trial court initially granted TPC's motion, but it subsequently vacated its order and scheduled a hearing for January 27, 2014. Dotson filed his response that same day, including the entire transcripts of Dotson's and McCorquodale's depositions, and the trial court again reset the hearing for February 10, 2014.[1] The trial court ordered Dotson to file deposition excerpts by February 5, 2014.

Dotson never filed deposition excerpts. Instead, on February 3, 2014, Dotson filed a First Amended Response, without seeking leave of court. TPC moved to strike Dotson's amended response and portions of his affidavit, which

---

[1] The record reflects that the trial court entered a notice for a summary-judgment hearing on this date, but does not reflect whether the hearing actually took place. The court reporter's information sheet reflects that there is no reporter's record in this case.

was attached to his original response. Dotson did not respond or oppose the motions to strike.

On February 13, 2014, the trial court entered an order striking Paragraphs 5, 6, 23, and 28 of Dotson's affidavit. On the same day, it entered an order striking Dotson's amended response and the depositions attached to Dotson's original response and granting TPC's motion for summary judgment.

**Discussion**

**I.    Did the trial court err by striking the deposition transcripts and Dotson's amended response?**

In his third and fourth issues, Dotson contends that the trial court improperly struck (1) two deposition transcripts that were attached to and supported his original response to TPC's motion for summary judgment and (2) Dotson's amended response.

Dotson attached as exhibits to his original response to TPC's motion for summary judgment the entire deposition transcripts of McCorquodale and Dotson. The trial court ordered Dotson to file deposition excerpts, but he failed to do so. Rather, Dotson filed an amended response, without leave of court. TPC filed motions to strike Dotson's amended response and portions of Dotson's affidavit, which was also an exhibit attached to his original response. Dotson filed no response to these motions. The trial court's order granting summary judgment and dismissing Dotson's claims ordered (1) Dotson's amended response stricken in its

entirety and (2) the depositions of McCorquodale and Dotson, attached to Dotson's original response, stricken as improper summary-judgment evidence. The trial court also entered a separate order striking four paragraphs of Dotson's affidavit, as TPC requested. Dotson made no objection or response asking the trial court to reconsider these rulings.

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . ." TEX. R. APP. P. 33.1(a). We review the trial court's decision to exclude evidence under an abuse of discretion standard. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). This includes the trial court's decision to sustain objections to summary-judgment evidence. *Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 521 (Tex. App.—Dallas 2007, no pet.); *Cruikshank v. Consumer Direct Mtg., Inc.*, 138 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The appellant bears the burden to bring forth a sufficient record showing the trial court abused its discretion. *See Russell v. City of Bryan*, 919 S.W.2d 698, 706 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Here, there is no record of any arguments that were presented to the trial court at the summary-judgment hearing, and Dotson may not argue on appeal "any and every new [issue] that he can think of, nor can he resurrect [issues] that he

abandoned at the hearing." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Accordingly, we conclude that by failing to object in the trial court, Dotson has waived the right to complain on appeal about the trial court's rulings striking his amended response and the depositions of Dotson and McCorquodale. *Cruikshank*, 138 S.W.3d at 499 ("By failing to object in the trial court, appellant has waived the right to complain on appeal about the trial court's ruling" sustaining employer's objections to employee's summary judgment affidavit); *Brooks v. Sherry Lane Nat. Bank*, 788 S.W.2d 874, 878 (Tex. App.— Dallas 1990, no writ) (holding appellant waived issue on appeal by not objecting to, or protesting, the motion to strike before trial court).

We overrule Dotson's third and fourth issues.

## II. Summary Judgment

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the

9

nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When there are multiple grounds for summary judgment and the order does not specify which was relied upon to render the summary judgment, the appellant must negate all grounds on appeal. *McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993)). "If summary judgment may have been rendered, properly or improperly, on a ground

10

not challenged, the judgment must be affirmed." *Ellis*, 858 S.W.2d at 898 (citing *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied)).

## A.    Race discrimination

In his first issue, Dotson contends that the trial court erred in granting summary judgment on his race discrimination claim.  In its summary-judgment motion, and on appeal, TPC argues that Dotson's race discrimination claim is barred by limitations.

### 1.    Applicable Law

The TCHRA prohibits an employer from discharging an individual on the basis of race.  TEX. LAB. CODE ANN. § 21.051 (West 2006).  Because one of the purposes of the TCHRA is to execute the policies of Title VII, in appropriate cases, Texas courts are guided by analogous federal statutes and cases interpreting them in applying the TCHRA.  *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

Texas law requires that a complaint of unlawful employment practices be filed with the EEOC or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred.  *Santi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 491 (Tex. App.—

Houston [1st Dist.] 2006, no pet.) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)). "This time limit is mandatory and jurisdictional." *Davis*, 226 S.W.3d at 491 (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991)). "Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction." *Id.* (citing *Czerwinski v. Univ. of Tex. Health Sci. Ctr.*, 116 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Vincent v. W. Tex. State Univ.*, 895 S.W.2d 469, 473 (Tex. App.—Amarillo 1995, no writ)).

### 2. Analysis

Here, the trial court granted summary judgment without specifying its reasons. Thus, to prevail on appeal, Dotson was required to negate all possible grounds raised by TPC's summary-judgment motion. *See McCoy*, 240 S.W.3d at 271; *Ellis*, 68 S.W.3d at 898. However, in his appellate brief, Dotson does not address the summary-judgment motion's assertion that his race discrimination claim is barred by limitations.

Summary judgment on Dotson's race discrimination claim "may have been rendered, properly or improperly," on this ground. *Ellis*, 68 S.W.3d at 898. Because Dotson did not challenge this ground on appeal, we must affirm the trial court's judgment as to race discrimination. *See McCoy*, 240 S.W.3d at 271 (when summary-judgment order does not specify grounds, the appellant must negate all

12

grounds on appeal); *Ellis*, 68 S.W.3d at 898 (same); *see also Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (to prevail on discrimination claim, plaintiff must file complaint of unlawful employment practices with EEOC or Texas Commission on Human Rights within 180 days after alleged unlawful employment practice occurred); *Davis*, 226 S.W.3d at 491 (same).

We overrule Dotson's first issue.

## B.    Retaliation

In his second issue, Dotson contends that the trial court erred in granting summary judgment on his retaliation claim.

### 1.    Applicable Law

Both Title VII and the TCHRA prohibit employers from retaliating against employees for engaging in protected activities, including opposing a discriminatory practice, making a charge, or filing a complaint. *See* 42 U.S.C.S. § 2000e–3(a); TEX. LAB. CODE ANN. § 21.055 (West 2006). The law governing retaliation claims under Title VII and the TCHRA is largely identical.[2] *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *see also* TEX. LAB. CODE ANN. § 21.001(1) (West 2006); *Quantum Chem. Corp.*, 47 S.W.3d at 476.

---

[2]    The TCHRA and Title VII are no longer analogous "where pay discrimination complaints are concerned," but there is no allegation of pay discrimination in this case. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012).

To establish a prima facie case under Title VII or the TCHRA, a plaintiff must show that (1) he participated in protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action. *See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (Title VII); *Dias v. Goodman Mfg. Co.*, L.P., 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (TCHRA). The employee must establish that absent his protected activity, the adverse employment action would not have occurred when it did. *See Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 262 (Tex. App.—Dallas 2009, pet. denied); *McMillon v. Tex. Dep't of Ins.*, 963 S.W.2d 935, 940 (Tex. App.—Austin 1998, no pet.). In other words, the plaintiff must prove that he would not have suffered an adverse employment action "but for" engaging in the protected activity. *Navy v. College of the Mainland*, 407 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ⸺ U.S. ⸺, 133 S. Ct. 2517, 2533 (2013) (discussing causation requirement for retaliation claim brought under Title VII). The employee need not establish that the protected activity was the sole cause of the employment action. *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.).

When an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action. *Brewer v. College of the Mainland*, 441 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 554 (Tex. App.—Dallas 2006, no pet.). If the employer does so, the burden shifts back to the employee to show that the articulated reasons are pretextual. *See Quantum Chem. Corp.*, 47 S.W.3d at 482 (plaintiffs pursuing claims under TCHRA must "show that discrimination was a motivating factor in an adverse employment decision"). "To carry this burden, the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer." *Navy*, 407 S.W.3d at 900–01 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

### 2. Analysis

#### (a) New role and additional job duties

To the extent that Dotson contends that his role change in December 2010 and any resulting additional job duties constitute retaliation, we conclude that the claim is time barred. Texas law requires that a complaint of unlawful employment practices be filed with the EEOC or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred. *Specialty Retailers, Inc.*, 933 S.W.2d at 492. The fact that the employee may have

felt the effects of the discriminatory treatment later or that the damage may continue to occur for an extended period of time after the discriminatory treatment does not extend the commencement of limitations. *Id.*

Here, Dotson's role changed in December 2010 and he filed his charge of discrimination in August 2011. To preserve any claim related to this role change, Dotson had to file a complaint within 180 days. Because Dotson filed his charge of discrimination in August 2011, more than 180 days after the allegedly adverse employment action, the trial court lacked jurisdiction over any retaliation claims related to his new role and resulting additional job duties.[3] *See Schroeder*, 813 S.W.2d at 486 (180-day time limit is jurisdictional); *Davis*, 226 S.W.3d at 491 ("Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction."); *Czerwinski*, 116 S.W.3d at 122 (same).

---

[3] We note that the continuing violation doctrine is an exception to the 180-day limitations period. *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Id.* (citing *Wal–Mart Stores v. Davis*, 979 S.W.2d 30, 31 (Tex. App.—Austin 1998, pet. denied)). Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Id.* Here, Dotson did not allege that the continuing violation doctrine applies or show evidence of an organized scheme that gave rise to his claim. Accordingly, the continuing violation doctrine does not apply. *See id.*

## (b) Termination

Having concluded that Dotson cannot bring a retaliation claim based on his role change, we next consider whether the trial court properly granted summary judgment on his retaliation claim based on his termination. Dotson contends that TPC was not entitled to summary judgment on this claim because he established a prima facie case and pretext.

We assume, without deciding, that Dotson made a prima facie case of retaliation and shifted to TPC the burden of offering a legitimate, non-discriminatory reason for terminating Dotson. TPC adduced the following summary-judgment evidence to meet this burden:

- TPC's TEE policy which required Dotson to "only incur expenses that are reasonable and necessary to conduct Company business" and stated that disregarding TPC's policies and guidelines could "result in disciplinary action up to and including termination;"

- TPC's TEE policy which required employees to rent full-size cars and "generally take advantage of cost-saving fueling options;"

- The spreadsheet that Mershon created detailing suspect expenses submitted by Dotson, along with receipts;

- McCorquodale's affidavit in which she averred that Dotson's expense reports "showed many questionable or suspect charges," that "Dotson was unable to provide any exculpatory explanation for the questioned charges," and that Mershon terminated Dotson for "falsifying company records."

McCorquodale noted three specific suspect incidents in her affidavit. First, McCorquodale averred that Dotson's expenses for March 7 and 8, 2011 were

17

suspect because his report stated that he went to the Baytown plant on March 7 and 8, but the badge in/out records showed that Dotson was at the Houston plant—and not at the Baytown plant—on March 7 and March 8. Second, McCorquodale averred that Dotson's rental car receipts showed that he often rented sports utility vehicles, despite TEE's policy "requir[ing] that employees rent a full-size vehicle only." Third, McCorquodale averred that Dotson used the company credit card to pay for 10 gallons of gasoline on March 22, 2011, but on that day he was scheduled to drive to a location that was "only a few miles" from the Houston plant. Thus, TPC adduced summary-judgment evidence of a legitimate non-discriminatory reason for terminating Dotson: McCorquodale and Mershon reviewed Dotson's expense reports and determined that Dotson violated TPC's TEE policy.

Dotson argues that even if TPC met its burden, summary judgment was improper because Dotson met his burden to adduce evidence that TPC's articulated reasons for termination were pretextual.[4] To avoid summary judgment, Dotson had to provide more than a scintilla of evidence that the true reason TPC fired him was retaliation. *See Chandler v. CSC Applied Technologies, LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (plaintiff can avoid

---

[4] We note that in his appellate brief, Dotson made arguments regarding pretext in the sections on race discrimination and retaliation. Because the summary-judgment evidence is the same for both claims regarding pretext, we consider the evidence discussed in both arguments.

summary judgment if the evidence, taken as a whole, creates fact issue as to whether each of employer's stated reasons was not what actually motivated the employer).

In an effort to raise a fact issue on pretext, Dotson argues that TPC failed to offer any evidence supporting that TPC had a good faith belief that Dotson had committed violations and that "the evidence demonstrates that TPC engaged in bad faith treatment of Mr. Dotson." Dotson correctly notes that "the issue is not the truth or falsity of the allegation," but whether the employer "reasonably believed" the allegations and acted on it in "good faith." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)). Here, the evidence showed that McCorquodale had a reasonable belief, based on her investigation with Mershon, that Dotson violated TPC's policies. Dotson has presented no evidence to raise a fact issue as to McCorquodale's good faith belief or her reliance on it in deciding to terminate Dotson. *See id.* (no fact issue where appellant presented no evidence "as to why the company's reliance on the evidence against him was in bad faith"). Dotson's proof that he was not afforded the opportunity to review his expense reports and fully explain the expenses fails to raise a fact issue as to McCorquodale's good faith belief. *See id.* (appellant's "assertion of innocence

19

alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating him").

Additionally, Dotson argues that he satisfied his burden to raise a fact issue regarding pretext because he adduced evidence that Mershon and McCorquodale conducted an inadequate investigation. According to Dotson's affidavit, Mershon and McCorquodale failed to ask him about certain items on the spreadsheet and refused to allow him to review his expense reports and fully explain the alleged violations. Dotson also averred that HR conducted a more thorough investigation into Dotson's complaints regarding Henneke—the alleged noose incident—and Stone—the "Don't get caught outside at night after dark" comment.

Because Dotson was an at-will employee, TPC was not required to conduct an investigation regarding his violation of policy before terminating him. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003) (holding that an at-will employer need not conduct investigation before terminating employee and employer may terminate for any reason, as long as it was not illegal, or no reason at all). Even assuming that Henneke and Stone were afforded more thorough investigations than Dotson and that McCorquodale and Mershon did not afford Dotson the opportunity to review and explain his expense reports before deciding to terminate him, unfair treatment regarding an investigation does not constitute a basis for a retaliation claim. *See King v. Louisiana*, 294 Fed. App'x 77, 85–86 (5th

20

Cir. 2008) (citing *Burlington Northern v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)), *cert. denied*, 129 S. Ct. 2053 (2009) ("Even taken in a light most favorable to [plaintiff], allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation."). Therefore, Dotson failed to raise a genuine issue of material fact by contending that he did not have the benefit of a complete or more thorough investigation. *See Canchola*, 121 S.W.3d at 740 ("[I]t is not sufficient for [the employee] to present evidence that the [employer's] investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion").

Dotson also contends that he raised sufficient evidence of pretext because the evidence demonstrates that Mershon violated TEE policy but was not investigated because, unlike Dotson, Mershon had not filed any complaints. Dotson alleges that Mershon violated TPC's policy requiring a supervisor to review expense reports before approving them and providing that a supervisor be disciplined if he approves an expense report in error. In support of this argument, Dotson relies on McCorquodale's deposition testimony that the trial court struck. Because we may not consider stricken evidence when reviewing a summary judgment, we conclude that Dotson fails to raise a fact issue on this basis. *See Esty v. Beal Bank, S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.)

("Evidence which has been excluded by written order or ruling of the trial court is not part of the summary judgment evidence to be considered."). Additionally, even if we were to consider evidence that Mershon was treated more favorably than Dotson in this regard, it would not raise a fact issue because Mershon was Dotson's supervisor, and therefore they were not similarly situated employees. *See Crosby v. Computer Sci. Corp.*, 470 Fed. App'x 307, 309 (5th Cir. 2012) (plaintiff's supervisor not a valid comparator); *see also Grimes v. Wal–Mart Stores Tex., L.L.C*, 505 Fed. App'x 376, 379 (5th Cir. 2013) (plaintiff's subordinate who was also a manager not a valid comparator); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (concluding co-workers were not similarly situated because they did not perform same primary duties).

We conclude that Dotson's evidence fails to raise a fact issue regarding pretext. Accordingly, we hold that the trial court did not err in granting TPC's motion for summary judgment as to Dotson's retaliation claim.

We overrule Dotson's second issue.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.